JOSEPH C. PARISI AND J. FLETCHER CREAMER, SR., PLAIN-
TIFFS-RESPONDENTS, v. NORTH BERGEN MUNICIPAL PORT
AUTHORITY AND ROC HARBOUR CORP., DEFENDANTS-AP-
PELLANTS, AND TOWNSHIP OF NORTH BERGEN, HUDSON
PLAZA, INC., AND ASSET MANAGEMENT CORP., DEFEND-
ANTS.

ELIZABETH MEYERS, PLAINTIFF-RESPONDENT, v. NORTH BER-
GEN MUNICIPAL PORT AUTHORITY AND ROC HARBOUR
CORP., DEFENDANTS-APPELLANTS, AND TOWNSHIP OF
NORTH BERGEN, HUDSON PLAZA, INC., AND ASSET
MANAGEMENT CORP., DEFENDANTS.

Argued September 22, 1986—Decided January 13, 1987.

*Michael L. Scherby* argued the cause for appellant ROC Harbour Corp. (*Contant, Contant, Schuber, Scherby & Atkins,* attorneys; *Andrew T. Fede,* on the briefs).

*William Z. Shulman* argued the cause for appellant North Bergen Municipal Port Authority (*William Z. Shulman,* attorney; *Mr. Shulman* and *Thomas J. Wall,* on the briefs).

*Melvin Gittleman* argued the cause for respondents Joseph C. Parisi and J. Fletcher Creamer, Sr. (*Gittleman, Muhlstock & Meyers,* attorneys; *Steven D. Muhlstock,* on the brief).

*George E. Pollard* argued the cause for respondent Elizabeth Meyers (*Beattie, Podovano, Breslin, Dunn and Kafafian,* attorneys).

The opinion of the Court was delivered by

HANDLER, Justice.

ROC Harbor Corporation (ROC) is the contract purchaser of property that lies within the Township of North Bergen. The property is located within the North Bergen "port district." ROC made an application to the North Bergen Planning Board (Board) for authorization to construct a residential condominium development on its property. The application was opposed by adjacent property owners and a taxpayer in the community.

These differences eventuated in litigation in which the central issue is whether the Board or the North Bergen Municipal Port Authority (Authority) has jurisdiction over the proposed use of ROC's property.

### I.

On February 27, 1981, ROC applied to the Board, seeking site plan approval for the construction of a residential condominium on its 21.5 acres property. It proposed constructing two 240–foot high-rise towers; its application accordingly included a request for a height variance from the zoning ordinance's building height limitation of 40 feet.

Subsequent to the filing of ROC's application, the Township of North Bergen, on December 17, 1981, passed an ordinance pursuant to *N.J.S.A.* 40:68A–32, creating a municipal port authority and delineating a "port district" over which the Authority had statutory responsibilities. ROC's property was located within the port district. The newly created Authority through its counsel appeared at the Planning Board hearings on ROC's application. The Authority raised the question as to which entity, the Board or the Authority, had jurisdiction to act upon the ROC application for condominium development. Apparently it was decided that "concurrent jurisdiction" would be appropriate, for the time being.

The Board conducted seven hearings on the application and, by resolution dated June 15, 1982, granted the relief sought by the application. The Board determined that "the within application meets the criteria set forth for a special use." The Board also included certain conditions, one of which was that ROC must obtain approval from the Port Authority.

On June 23, 1982, adjoining property owners, plaintiffs Joseph C. Parisi and Fletcher Creamer, Sr., filed a complaint in lieu of prerogative writ seeking to set aside the Board's determination on the basis that it did not have jurisdiction to entertain the application. The Authority was also named as a

defendant in that action. The Authority filed a motion for summary judgment, arguing "that the * * * Authority has sole and exclusive jurisdiction of all applications for development within the North Bergen Port District * * *." Plaintiffs filed parallel motions also contending that exclusive jurisdiction reposed in the Authority.

Prior to a determination of the motions, on September 7, 1982, ROC filed its application with the Authority seeking approval of its proposed development.[1] Six public hearings were held before the Authority pursuant to its rules and regulations. While the matter was before the Authority and after the fifth hearing on ROC's application, the trial court, on January 28, 1983, determined the motions for summary judgment in the pending action. It ruled that the Authority had exclusive jurisdiction of the Port District of North Bergen, and set aside the earlier Board approval of ROC's application.

Following the court's ruling, the Authority, in the sixth and final hearing on February 15, 1983, adopted a resolution granting site plan approval and a height variance to ROC.[2]

Thereafter, a separate action in lieu of prerogative writ challenging the Authority's action was filed by the plaintiff Elizabeth Meyers, a taxpayer of North Bergen, later joined by plaintiffs Creamer and Parisi. Plaintiffs contended, *inter alia,* that the Authority's action was "arbitrary" and "lack[ed] the authority and jurisdiction to effectuate a change in the town's zoning scheme," and that public property, a municipal street, had been improperly taken.

---

[1]The Authority, following its creation under the municipal ordinance, adopted land-use regulations. ROC's application before the Authority was an application for Certificate of Zoning Compliance, height variance, and site plan approval, as required under the Authority's regulations.

[2]During the proceedings before the Authority, ROC had its application amended to provide for three 175-foot towers.

The Authority in the second action filed a motion for summary judgment claiming that it had jurisdiction over the application and that the plaintiff's action was barred by *res judicata*. In the first action, the plaintiffs had successfully contended that the Authority had exclusive jurisdiction to hear and determine the application for approval of the condominium development. In the second action, plaintiffs argued that the Authority did not have jurisdiction to approve the application, contending that since a height variance was required, only the appropriate authorized municipal board could grant the variance. Claiming under the municipal land use law that the planning board has jurisdiction over height variances, plaintiffs in effect sought in the second suit the result they had opposed in the first. After a hearing on the merits held on October 31, 1983, the trial court, on December 6, 1983, issued two decisions. In the first it held that plaintiffs, by virtue of the judgment obtained in January 1983, were barred by *res judicata* from relitigating the jurisdictional issue; it also reiterated its earlier determination that the Authority is not subject to the local zoning laws and has complete and exclusive jurisdiction over lands within its boundaries. In the second decision the trial court concluded that the Authority's determination was adequately supported by evidence that the Authority "is exempt from North Bergen zoning law," and that the plan approved was feasible and reasonable and no unlawful taking of a municipal street occurred. Judgments were entered on December 19, 1983. Notices of Appeal were filed by plaintiffs Creamer and Parisi on January 12, 1984, and Meyers on February 14, 1984. On February 23, 1984, the Authority adopted its first zoning ordinance for the Port District.

The Appellate Division then reversed in a reported opinion, *Parisi v. North Bergen Mun. Port Auth.*, 206 *N.J.Super.* 499, 508 (App.Div.1985). It determined that *res judicata* did not bar plaintiff Meyers from relitigating the jurisdiction issue. As to the merits of the case the court determined that the Authority had no power to control the structural nature of non-port

related buildings and "that approval of high-rise condominiums and development by private parties * * * is not within the definition of 'port system.'" *Id.* at 511. The Appellate Division also found that the resolution of the Authority was "patently deficient to establish sufficient grounds for approval of the application." *Id.* at 504.

Judge Petrella concurred and concluded that *N.J.S.A.* 40:68A–29 to –69 in no way grants anything "akin to zoning authority to a Municipal Port Authority." *Id.* at 513 (Petrella, J., concurring). He argued further that there was no basis to imply that the Authority has power to permit non-governmental entities to disregard local regulations, *id.* at 514, and that the trial judge applied "a *non sequitur* when he concluded that because a * * * port authority may not be subject to local zoning it therefore had exclusive jurisdiction in the area." *Id.* at 516.

## II.

The threshold issue is whether the second law suit was barred by the doctrine of *res judicata.* The first law suit had determined that exclusive jurisdiction was in the Authority and not in the Planning Board; the second suit similarly concluded that the Authority had jurisdiction to act upon the application for site-plan approval for a residential condominium development. The plaintiffs, who were successful in the first suit, sought a different result in the second. The defendant Authority asserted the bar of *res judicata.*

On this issue the Appellate Division ruled that, at least with respect to plaintiff Meyers, the doctrine of *res judicata* would not bar a second lawsuit. The Appellate Division discussed a difference in the respective causes of action:

> [T]he decision in the first case was that the planning board did not have jurisdiction. Meyers' action [*i.e.,* the second lawsuit] did not seek a declaration regarding the planning board, or even as to the Authority's existence in the port district, but a determination that the Authority had no statutory power or

jurisdiction to authorize private developers to build contrary to North Bergen's zoning scheme. [*Parisi, supra,* 206 *N.J.Super.* at 509 (majority opinion).]

We agree with this characterization of the litigation. In the second action the claims centered on the *nature* of Authority jurisdiction, while the first action involved only a challenge to the existence of jurisdiction in the Authority over the subject matter. In the first case, plaintiffs (exclusive of Meyers) challenged the powers of the Planning Board to act in the matter on the grounds that the Authority had exclusive jurisdiction. The specific question raised in the second suit related to whether the Authority's actual exercise of jurisdiction was proper—particularly whether it could be undertaken independent of any restrictions reflected in the Municipal Land Use Law (MLUL) and the local zoning ordinance.

It is suggested that the claims of the second suit could have been raised in the first suit. It is argued that either the entire controversy doctrine or collateral estoppel thus forecloses the consideration of these in the second suit.

Respondent relies on the case *In re Petition of Gardiner,* 67 *N.J.Super.* 435 (App.Div.1961), for its claim that the second suit should have been barred by *res judicata.* In *Gardiner* a taxpayer challenged the legality of a city contract. The court rejected the challenge; one basis for the rejection was that in an earlier case another taxpayer had lost a challenge to the same contract brought on the same ground. *Id.* at 447–49. The court held that the second taxpayer's suit was barred by *res judicata,* even though the plaintiffs in the two cases were different.

*Gardiner* extended the doctrine of claim preclusion beyond identity or privity of parties in some cases where individual plaintiffs are suing as representatives rather than as advocates of their own individual interests. However, when the plaintiff represents a larger group—especially when the representation is implicit, as it was in *Gardiner* and is in *Parisi,* rather than explicit, as it is in class action suits (which have built-in protections against preclusion problems)—applying *res judicata* may

unjustifiably and unjustly work against public interests. Also, the cases in *Parisi* involve much more than whether a particular set of high-rise towers will be built. *Parisi* involves the first determination of the relative powers of a municipality's planning board and its authority to zone and to regulate within a municipal port district. The widely different conclusions of the trial court and the Appellate Division in this case on these subjects shows the difficulty and the importance of the issues. *See Parisi, supra,* 206 *N.J.Super.* at 504–06, 511–12. *See generally Restatement (Second) of Judgments* § 28(5)(a) (1982) (public interest exception to claim preclusion).

Further, *Parisi* is distinguishable from *Gardiner,* in that the two cases in *Parisi* involve a changed set of issues and a changed set of background facts. *Cf. Plainfield v. Public Service Electric and Gas Company,* 82 *N.J.* 245, 257–59 (1980) (second suit not barred by *res judicata* because the passage of sixty years since the first suit had changed the factual and legal context of the suit). Only following the initial lawsuit did the Authority actually undertake to implement its statutory jurisdiction. Hence in the second action, unlike the first, the court could properly address issues relating to the scope, nature and actual exercise of the Authority's power.[3] The issues posed by the second lawsuit relating to the extent and exercise of the port authority's powers were not present in the first case and did not have to be decided to resolve that case. Further, such issues were neither fully briefed by the parties in that

---

[3]The problem of giving preclusive effect to the ruling in the first case—here, affecting the scope and validity of regulations not yet even promulgated—is related to the problem of advisory opinions:

Such opinions, such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests, we have consistently refused to give. [*United States v. Fruehauf,* 365 *U.S.* 146, 157, 81 *S.Ct.* 547, 554, 5 *L.Ed.*2d 476, 483 (1961).]

case nor fully considered by the court. Issues not essential to the first adjudication and not fully considered in the first adjudication should not be held to be barred in the second adjudication. *See* 46 *Am.Jur.*2d Judgments §§ 422–24 (1969).

We note that in some contexts, a litigant—even a representative taxpayer—may be barred or estopped from pursuing in successive actions diametrically opposite claims. We need not, however, further explore this question or the degree of privity among successive claimants as bearing upon the viability of the second action. Because the added or supplemental issues of the second suit necessarily implicate the issue involved in the first action and may require in a more focused light the re-examination or reconsideration of the issue earlier decided, and all issues are strongly impressed with a public interest, we are satisfied that the doctrine of *res judicata* does not bar the subsequent determination. We accordingly affirm the judgment of the Appellate Division that these issues were properly raised in the second suit.

## III.

■ Determining the nature and extent of the Authority's jurisdiction over an application to construct a high-rise residential building in the port district requires a searching examination of the statutory authority. The Authority was created by North Bergen pursuant to the Municipal Port Authority Law, *N.J.S.A.* 40:68A–29 to –69 (MPAL). The MPAL authorizes municipalities to create a municipal port authority. A port authority is a "public body politic and corporate constituting a political subdivision of the State." *N.J.S.A.* 40:68A–40. The policy for authorizing the creation of port authorities was to "foster and promote by all reasonable means the establishment and development of port facilities in municipalities in, along or through * * * which a navigable river flows * * *." *N.J.S.A.* 40:68A–30.

The MPAL "[a]uthoriz[es] municipalities * * * by means and through the agency of a municipal port authority, to acquire, construct, maintain, operate, improve or lease public port facilities." *N.J.S.A.* 40:68A–30(1). Among the port authorities' powers are the powers to

[Determine] the exact location, type and character of all matters in connection with all or any part of the port system[4] which it is authorized to own, construct, establish, effectuate or control * * *. [*N.J.S.A.* 40:68A–40(8).]

[Make and enforce] bylaws or rules and regulations for the management and regulation of its business and affairs and for the use, maintenance and operation of the port system and any other of its properties * * *. [*N.J.S.A.* 40:68A–40(9).]

[Perform] any and all things necessary, convenient or desirable for the purposes of the municipal port authority. * * *. [*N.J.S.A.* 40:68A–40(12).]

The purpose of a port authority is not the development of a port district as such, but rather "the improvement and development of such port district for port purposes, or directly related thereto." *N.J.S.A.* 40:68A–39. "Port purposes"[5] is not directly defined in the law but may be understood from the context of the declared policy of the MPAL, and its definition of "port system":

"Port system" shall mean all real and personal property acquired, constructed or operated or to be acquired, constructed or operated by a municipal port authority for the purposes of the municipal port authority, including piers,

---

4 "'Port system' shall mean all real and personal property acquired, constructed or operated * * * by a municipal port authority for the purposes of the municipal 'port authority,' * * *." *N.J.S.A.* 40:68A–31(6).

5 Reference to "port purposes" or "the purposes of the municipal port authority" are extensively used in the Municipal Port Authorities Law to condition the grant of power to port authorities: *e.g., N.J.S.A.* 40:68A–40(4) (acquiring property), 40:68A–40(7) (accepting gifts and grants), 40:68A–40(8) (determining site location and taking surveys), 40:68A–40(12) (contracts), 40:68A–53 (eminent domain), 40:68A–56 (grants from municipality), 40:68A–59 (disposing of property).

In other subsections, power is conditioned on the matter being directly related to the "port system": *e.g.* 40:68A–40(9) (promulgating regulations), 40:68A–41 (facility charges), 40:68A–42 (schedule of facility charges), 40:68A–44 (issuing bonds), 40:68A–54 (relocation of facilities), 40:68A–56 (grant from municipality), 40:68A–58 (leasing), 40:68A–63 (tax exemptions). MPAL's definition of "port system" is repeated in the text.

wharves, docks, bulkheads, slips, basins, anchorage areas, jetties breakwaters, harbor craft or any kind, buildings, structures, warehouses, terminals, loading areas, plans, vehicular roadways, railroad connections and tracks, yards, sheds, and every kind of terminal, storage or supply facility now in use or hereafter designed for use to facilitate shipping, the handling, storage, loading or unloading of freight or cargo at marine terminals, and all other franchises, property and rights therein and appurtenances thereto necessary or useful and convenient in connection therewith. [*N.J.S.A.* 40:68A–31(6).]

The functional nature of the port authorities' powers is shown in the statement of the MPAL's public interest and policy, *N.J.S.A.* 40:68A–30, in the statement of the purpose of municipal port authorities, *N.J.S.A.* 40:68A–39, in the limitation of the port authority's governmental powers to uses relating to the creation or maintenance of port facilities, *N.J.S.A.* 40:68A–40, and in the granting of other governmental powers towards these ends, *e.g., N.J.S.A.* 40:68A–44 (issuing bonds), 40:68A–53 (eminent domain). The limited powers and purposes of port authorities are also implied by MPAL's definition of "port districts" as "area[s] within the territorial boundaries of a municipality which creates a municipal port authority." *N.J.S.A.* 40:68A–31(5).[6]

From an examination of the law, we can conclude that phrases like "port purposes", "port system", and "port facilities" are legislative terms of art, meant to be interpreted to include only structures, improvements, and uses directly related to the docking of ships and to the transportation of goods and persons to and from the ships. A fair reading of the statute shows that the Authority's powers are limited to matters directly related to the creation and maintenance of a port system.[7]

---

[6]The Ordinance creating the North Bergen Municipal Port Authority, which otherwise goes to great efforts to track the MPAL, created a port district that encompasses only about one-third of the land area of North Bergen. *See Parisi, supra,* 206 *N.J.Super.* at 502–03, 507–08.

[7]We must also assume in this regard that the Legislature drew on past experience and its own similar enactments. The proffered interpretations of the MPAL are strengthened by looking at the law that established the South Jersey Port Corporation, *N.J.S.A.* 12:11A–1 to –29. The South Jersey Port

All parties concede, and the Appellate Division agreed, that the MPAL gives the Authority power to determine the nature of structures that are directly and clearly related to port purposes. *Parisi, supra,* 206 *N.J.Super.* at 511. However, as noted, the Authority adopted its own zoning regulation purporting to govern all land uses within the port district. It granted ROC's application by applying its own zoning regulations. The Appellate Division determined that the attempted exercise of general zoning powers was *ultra vires. Id.* at 510.

We agree with the Appellate Division that it is fair to characterize the port authority as a functional-type entity, examples of which abound in our statutes.[8] Functional entities have powers limited to particular topics rather than broad governmental powers within a geographic area.

Applying the statute, the Appellate Division concluded that a proposal not intended to facilitate freight and cargo handing at

Corporation Act (SJPCA) generally parallels the language of the MPAL. (The South Jersey Port District encompasses all the land in seven counties, though the South Jersey Port Corporation does not take over the municipal functions within those areas. See *N.J.S.A.* 12:11A-4, 12:11A-6.) The purpose of the SJPCA, like the purpose of the MPAL, is to promote the creation and maintenance of adequate port facilities. *N.J.S.A.* 12:11A-1. The definition of "marine terminals" and "marine terminal purposes" parallels MPAL's definitions of "port system" and "port purposes," but the SJPCA more clearly indicates that these concepts are to be narrowly construed. *N.J.S.A.* 12:11A-3. The powers given to the South Jersey Port Corporation are nearly identical to those granted to the port authorities. *Compare N.J.S.A.* 12:11A-6 to –22 *with N.J.S.A.* 40:68A-40 to –63.

[8]For example, a governmental parking authority can plan, construct, and improve parking projects. *N.J.S.A.* 40:11A-6. A sewer authority has jurisdiction over the construction, maintenance, operation, and use of sewers, pipes, stations and plants notwithstanding any other ordinances. *N.J.S.A.* 40:14-6. Municipal Utility Authorities (MUA) deal with water supply and solid waste disposal. *N.J.S.A.* 40:14B-19(a). (It is plainly stated that MUA approval of plans for facilities is not a substitute for MLUL compliance and approval as well as submission to the planning board. Senate County & Municipal Government Committee Statement, A. 1680, L.1979, c. 418. The MUA is also not subject to Title 40 or 40A. *N.J.S.A.* 40:14B-68.)

marine terminals would not constitute a port facility and that high-rise residential condominiums built by private parties would not be within the definition of a "port system." *Id.* at 511–12. Thus, the powers vested in the Authority under *N.J. S.A.* 40:68A–40(8) do not encompass ROC's application. Nor would the Appellate Division imply such power for a project which was not undertaken by the Authority itself and which was not connected directly with port facilities. *Id.* at 512.

■ The question remains as to whether the Authority can act in any respect regarding an application dealing with a non-port use. It follows from what we have determined that it cannot. That authority remains in the Planning Board. On the other hand, it does not follow that if the Authority does have power to act upon a land-use application because it comes with the definition of a "port facility," it may do so independent and without consideration of the municipality's zoning and land-use regulations or according to its own general zoning regulations.

In addition, at the time it was called upon to act in this case, the Authority had no regulatory standard by which to measure the variance request and site plan. It is hard to believe that the legislature left the Authority unbridled powers. *See Union County v. Benesch,* 98 *N.J.Super.* 167, 178–79 (Law Div.1967), modified, 103 *N.J.Super.* 119 (App.Div.1968). Thus, even if the application were within the Authority's jurisdiction, action at that time arguably would have been premature. Nevertheless, in the course of the proceedings the Authority purported to enact a zoning ordinance. The question remains whether the Authority had the power to adopt independent land-use regulations that it could apply without reference to the municipal local zoning ordinance and regulations. Judge Petrella in his concurrence concluded that the failure expressly to provide for zoning authority in the enabling statute shows that the Legislature did not intend to have a port authority supersede other municipal controls in the port district. *Parisi, supra,* 206 *N.J.Super.* at

513–16 (Petrella, J., concurring). Therefore, the zoning ordinance and land use regulations of the Authority are void.

[There is] no basis for implying as a necessary or incidental power in a Municipal Port Authority, the ability to permit nongovernmental entities, *i.e.*, private entities, to disregard local planning and zoning requirements. [*Id.* at 514.]

We agree. As Judge Petrella correctly points out, the Legislature usually provides zoning powers when it intends to confer such authority on statutorily-created independent agencies. *Id.*

The MPAL does not expressly grant zoning authority. Nor do we find any basis in the statutory language or in the legislative history to imply such wide powers. Without language close to that found in *N.J.S.A.* 13:17–6(i), –6(r), –6(t), and –11, giving the Hackensack Meadowland Development Commission powers to implement master plans for the area, and that involved in the Pinelands and CAFRA legislation, we are unable to conclude that the Authority has the power to promulgate land-use rules and regulations.[9]

■■ Consistent with this reasoning, the application in this case should have been determined by the Board. Should the ROC re-submit its amended application to the Board, in connection with any hearings upon the application, it would be entirely appropriate for the Board to take into account the record and the findings of the earlier ROC proceedings before the Board. It would also be proper for the Board to consider the record of the proceedings conducted by the Authority notwithstanding our conclusion that the Authority lacked the statutory power to entertain and determine the application. The record of those proceedings retains relevance because the application was sub-

---

[9]Even in the regulation of port uses in the port district, where the Authority's powers are clearest, the Authority is still subject to the municipality's zoning law (at least to the extent that this law does not interfere with MPAL's objectives). *See Fine v. Galloway Tp. Committee*, 190 *N.J.Super.* 432 (Law Div.1983). However, the Authority does have, of course, the power to promulgate limited rules regarding the construction and operation of port uses. *See, e.g., N.J.S.A.* 40:68A–30, –39, –40(8), –40(9), –40(11).

stantially the same and all necessary and interested parties participated in the hearings. We add, however, that because the application must be considered by the Board as a zoning matter, the findings of the Authority would not be binding upon it but entitled only to such weight as the Board determines to be proper. *See Garden State Farms, Inc. v. Bay*, 77 *N.J.* 439 (1978). In this vein, we add that the Authority can also appear before the Board to the extent there are matters relevant to the application that relate to the Authority's statutory concerns— the control of port uses within the port district. *Cf. City of Hackensack v. Winner*, 82 *N.J.* 1 (1980) (when two agencies have concurrent jurisdiction over a matter, each must treat the proceedings of the other with comity and deference). A failure to allow the Authority to present its views or to consider the Authority's interests before the Board may be an abuse of discretion. We pause briefly to comment upon the converse situation. Were such an application for a particular use in the port district clearly within the jurisdiction of the Authority and properly brought before it, the statutory scheme reasonably requires that similar deference by the Authority be accorded to the local land use policies of the municipality with the opportunity of those governmental entities entrusted with their effectuation to appear and express their positions.

These considerations lead us to conclude that the application in question properly falls within the statutory authority of the Planning Board and beyond the statutory responsibilities of the Authority. It follows therefore that the application proceedings be remanded and ultimately redirected to the Planning Board.

## IV.

The remaining issues may be disposed of without extended treatment. Because we have affirmed the judgment of the Appellate Division that the Authority had no jurisdiction, the issues of whether the Authority's or the Board's approval of

ROC's application was supported by sufficient evidence need not be considered.

Plaintiffs allege that ROC's application for approval was invalid also because the Authority unlawfully gave ROC a public roadway, Marine Road. This issue did not arise before the Planning Board, but was referred to at the Authority's hearings. At trial in the Superior Court, the trial court decided this issue in ROC's favor because the "trial exhibit clearly shows [that] Marine Way was undedicated." The Appellate Division found "the proofs as to the status of Marine Road not being a dedicated street ... inadequate ...," *Parisi, supra,* 206 *N.J.Super.* at 512, and therefore that an evidentiary hearing was necessary. *Id.*

The proponent of an alleged public street must prove both an intent to dedicate and acceptance by the municipality. *Barile v. Port Republic,* 186 *N.J.Super.* 587, 590 (Law Div.1982). Plaintiffs presented no evidence to even raise this issue: no expert report, official map, plat, chart, deed, easement, or license was presented to the trial court thereby prompting the necessity for a hearing. The only evidence of the undedicated nature of Marine Road comes from ROC's counsel, which is not evidentiary. *Parisi, supra,* 206 *N.J.Super.* at 512. Petitioners argue that since there was no *bona fide* dispute before the Authority, the representations of counsel concerning the state of title to the roadway were evidential. *Evid.R.* 3; *Moschou v. DeRosa,* 192 *N.J.Super.* 463, 467 n. 2 (App.Div.1984).

Since there was no proof by plaintiffs that Marine Road was dedicated or accepted, the trial court's decision must stand.

## V.

For the reasons given, the judgment of the Appellate Division is affirmed in part and reversed in part. The case is remanded to the trial court for proceedings consistent with this opinion.

*For affirmance in part, reversal in part*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.