NORTH BERGEN ACTION GROUP, HOWARD BARMAD AND DAVID KRONICK, PLAINTIFFS-RESPONDENTS, v. NORTH BERGEN TOWNSHIP PLANNING BOARD, DEFENDANTS-RESPONDENTS.

JOSEPH PARISI, PLAINTIFF-RESPONDENT, v. ROC HARBOUR CORP., DEFENDANT-APPELLANT, INTERVENOR, v. TOWNSHIP OF NORTH BERGEN PLANNING BOARD, ASSET MANAGEMENT CORP. AND HUDSON PLAZA, INC., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 14, 1989—Decided August 31, 1989.

Before Judges KING, BRODY and ASHBEY.

*Alfred A. Porro, Jr.* argued the cause for appellant Roc Harbour Corporation (*Porro and Porro* attorneys; *Alfred A. Porro,* on the brief).

*Bruce D. Greenberg* argued the cause for respondents North Bergen Action Group, Howard Barmad and David Kronick (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein* attorneys; *Douglas K. Wolfson,* of counsel; *Bruce D. Greenberg* and *Drew M. Hurley,* on the brief).

*Gittleman, Muhlstock, Meyers, Gundersen & Chewcaskie* attorneys for respondent Joseph Parisi (*Steven Muhlstock,* on the brief).

No brief was filed on behalf of the North Bergen Planning Board.

The opinion of the court was delivered by

ASHBEY, J.A.D.

This land-use appeal concerns the site-plan review jurisdiction of the planning board over an application for a height variance to build highrise apartments. It was calendared before us at the same time as *Commercial Realty v. First Atlantic Properties* (# A–4081–87T), 235 *N.J.Super.* 577 (App.Div.1989), in which we outlined applicable standards for determining planning board site plan jurisdiction over a height variance for a nonresidential building. The issues are similar. In *Commercial Realty*, 235 *N.J.Super.* at 582, we ruled that the planning board had jurisdiction because the municipal legislative scheme did not mandate otherwise. Applying the same reasoning to this case, we are satisfied that this municipal zoning ordinance did dictate otherwise, and that therefore the planning board did not have jurisdiction. We accordingly affirm the Law Division which so held, substantially for the reasons expressed in Judge Wefing's March 24, 1988 written opinion.

This matter has a long history. Developer Roc Harbour Corp. (Roc Harbour) appeals from a 1987 summary judgment in favor of prerogative writ plaintiff North Bergen Action Group (NBAG) which challenged the action of defendant North Bergen Planning Board (Board). The Board gave Roc Harbour site plan approval and permission to build three 177.9 feet high buildings in a zone where the maximum permitted height was either 40 feet or 75 feet (depending upon whether a 1982 ordinance or a 1985 ordinance was considered applicable).[1] The Board's action was followed by two complaints in lieu of pre-

---

[1]According to the applicant's submissions following oral argument before us, a 1987 ordinance had a 50 foot height limitatic ' (to be measured from the center line of River Road, a road traversing the coast line).

rogative writs, one by plaintiff Joseph Parisi (plaintiff in an earlier suit) and one by NBAG. After consolidating the two actions, Judge Wefing granted the summary judgment under appeal.

The Roc Harbour 1987 application was not the first to be heard by the Board. The planning board had voted approval of a similar variance and site plan on June 15, 1982. *See Parisi v. North Bergen Mun. Port Authority*, 206 *N.J.Super.* 499, 502 (App.Div.1985). The Law Division overturned that action, ruling that jurisdiction over the application was vested in the North Bergen Municipal Port Authority, which then approved Roc Harbour's preliminary site plan including height variances. *Id.* at 505. We reversed and our reversal was affirmed by the Supreme Court which held that the Municipal Port Authority did not have jurisdiction over the application. *Parisi v. North Bergen Mun. Port Authority*, 105 *N.J.* 25 (1987).

The following facts underlying Roc Harbour's development are not disputed. Roc Harbour is the owner of waterfront property known as Block 438A, Lots 2.2, 2.4D and 2.4D–2 in the Township of North Bergen. It sought to construct a residential condominium development.[2] According to its site plan, the development consists of 21.5 acres designated as 14.5 acres of upland and 7.0 acres over which water flowed. The 1987 application sought permission to construct 128 low-rise residential units in 31 separate buildings, 551 high-rise units consisting of the three towers of 19 stories each (including a three story parking garage) and a 210–slip marina.[3]

---

[2]While the applicant's post oral argument submissions refer to the 1987 ordinance, the parties made no reference to any Board planned-unit-development powers under either the 1982 or 1985 ordinance. *See N.J.S.A.* 40:55D–39 *et seq.* We assume there are none applicable.

[3]While the appellant's appendix contains three volumes, it did not contain any site plan, maps of elevations or copy of any North Bergen ordinance. We derive our facts from the briefs, testimony before the Board and Judge Wefing's opinion.

I

Although Roc Harbour sought a height variance, and if necessary, a lot coverage variance, the only issue on appeal is whether the height variance was properly within the Board's jurisdiction under the Municipal Land Use Law (MLUL) and the applicable ordinance.[4] The parties appear to have agreed before the Board that the ordinance to be applied was passed in 1982, based on their conclusion that the Supreme Court had vacated certain parts of the 1985 ordinance. Judge Wefing's March 24, 1988 opinion described the relevant ordinance and its relationship to the variance requested as follows:

> According to the representations of counsel at oral argument, the [1982] zoning ordinance of North Bergen upon which the Board relied in granting the variances contained a general town-wide height restriction of forty feet. ... the parcel in question was zoned ... for generalized "multi-family" use and the North Bergen zoning ordinance contained neither floor area ratio requirements nor density provisions. *N.J.S.A.* 40:55D–4.... These towers, if built, will be nearly 180 feet high and almost four times higher than anything permitted in the township at the time.

Judge Wefing held that the Board lacked jurisdiction to grant a height variance of the magnitude proposed because the height variance granted was so large as to represent a change in the use of the property, thereby requiring a use variance pursuant to *N.J.S.A.* 40:55D–70d, which could only be granted by a Zoning Board of Adjustment. Acting on the assumption that a density regulation did not apply, the judge reasoned that a 19–story apartment building was not a permitted "multi-family" use where the only permitted principal structure for the permitted use was a building which could not exceed 40 feet in height. She also said that the absence of a density requirement made "the height limitation contained within the ordinance [have] the practical effect of a density restriction."

In *Commercial Realty v. First Atlantic Properties,* 235 *N.J.Super.* at 591, we held that,

---

[4]According to testimony before the Board, the site plan contravened lot coverage and set back regulations as well the height limitation.

(1) Where the municipality has designated floor area ratios for the district, they control in determining which board has jurisdiction even if the applicable height limitations appear to conflict. If the project complies with the applicable floor area ratio regulation, then the planning board has jurisdiction over a height variance which becomes a matter of design, rather than intensity of use. If there is any question about compliance with floor area ratio regulation, however, the variance is a matter for zoning board review; (2) Where the municipality has failed under *N.J.S.A.* 40:55D–70d(4) to designate a relevant floor area ratio standard, only if there is clear evidence that the municipality so intended should zoning board jurisdiction be construed to be exclusive. In the absence of such evidence, the planning board has jurisdiction over height variances in connection with its site plan review powers; (3) If the ordinance does not specifically forbid the structure's height for the permitted use in question and does not forbid all structures at the height requested in the district, there is an absence of compelling evidence that the variance falls within *N.J.S.A.* 40:55D–70d(1) or that the structure sought is a "principal structure" which is forbidden in that district.

While Roc Harbour's 1987 application for site plan approval and related variances was not detailed, the record makes it clear that (unlike the applicant in *Commercial Realty*) Roc Harbour sought a *N.J.S.A.* 40:55D–70c(1), or "hardship c" variance, rather than a *N.J.S.A.* 40:55D–70c(2), or "flexible c" variance. The principles at issue, however, are the same. We are also satisfied that density restrictions, primarily applicable to residential structures, perform the same functions as floor area ratios, primarily applicable to nonresidential structures. *N.J.S.A.* 40:55D–70d(4), (5).

Applying our analysis to the North Bergen ordinances, it is clear that, whatever the controversy over the applicable height limitation (the 40 feet or the 75 feet), the height permitted by the planning board (177.9 feet) was far higher than any height permitted in any ordinance (including that permitted in the 1987 ordinance). Moreover, both later ordinances appear to have had a density limitation of 75 units per acre. While neither the Board nor the judge ruled specifically on the question of what acreage was subject to the density limitation, the judge impliedly found that it was exceeded. In any event, if one construes the density limitation of the 1985 ordinance to be applicable,

there was a dispute concerning its interpretation.[5]   A question concerning whether the applicant complies with a density or floor area ratio regulation belongs before the zoning board. *N.J.S.A.* 40:55D–70b;   40:55D–70d(4), (5).

If, on the other hand, one construes the 1982 ordinance to be applicable, without a density restriction, that ordinance's general height limitation permitted no structure at the proposed height in the district, nor, apparently, anywhere in the municipality.   In fact the Board recognized that the height of at least one of the buildings would exceed a height admittedly not permitted to be exceeded in the municipality, the height of the Palisades.[6]   It was, moreover, questionable, as Judge Wefing found, as to whether even the permitted "multiple-family" use might reasonably be interpreted to include three 19 floor buildings and 550 apartments, departures from the zoning ordinance of a truly drastic nature.

[5]Roe Harbour contended that its development did not violate this density regulation because its total of residential units (679) was less than the permitted 1,087.5 units for the 14.5 acres of upland.   That argument presupposed, however, that all of the acreage was available in 1987 to meet the density requirements.   In fact, however, although Roe Harbour withdrew a subdivision application, a *de facto* subdivision had already occurred because Roe Harbour had constructed 70 units on six acres.   The objectors contended that the density regulation must be applied to the 4.78 acres surrounding the 551 highrise residential units (115 per acre) to accord with Roe Harbour's site plan for which it sought the height variance.

[6]The Board was sufficiently concerned about not having the proposed towers exceed the elevation of the Palisades to take testimony from an independent expert.   The height limitation of 177.9 feet which the Board set was based upon an average Palisades elevation which had a 30 foot range.   The proposed towers, however, were not to be built at the mid-point of the elevation, but close to the lowest elevation, the northerly end of the project.   The Palisades elevation was 158.23 at the northerly point of the engineer's map, approximately 20 feet from the property line.   The Board's resolution acknowledged this discrepancy.

## II

In its second point Roc Harbour contends that the Supreme Court previously determined that its site plan and height variance application belonged before the Planning Board. We do not so view the record. Judge Wefing said,

Nowhere in [*Parisi v. North Bergen Mun. Port Authority*] did the Court consider whether this matter was within the purview of the planning, as opposed to the zoning, board of the township and this plaintiff [NBAG], not a party to that proceeding, may not be precluded from asserting the issue here.

We agree. It is also undisputed that there were intervening ordinance and master plan changes, new municipal legislation not considered in *Parisi*.

In sum, we are satisfied, as was Judge Wefing, that Roc Harbour's application involved a "principal structure" in a zone where such principal structure was not permitted, and accordingly the application belonged before the zoning board because a *N.J.S.A.* 40:55D–70d(1) variance application was required for the site plan approval sought.[7] We accordingly affirm.

---

[7]Because the issue is jurisdiction, we have no occasion to examine the Board's resolution concerning the asserted "hardship" for the specific findings required under *N.J.S.A.* 40:55D–70c(1).