585 A.2d 939

NORTH BERGEN ACTION GROUP, HOWARD BARMAD AND DAVID KRONICK, PLAINTIFFS–RESPONDENTS, v. NORTH BERGEN TOWNSHIP PLANNING BOARD, DEFENDANT.

JOSEPH PARISI, PLAINTIFF–RESPONDENT, v. ROC HARBOR CORP., DEFENDANT–APPELLANT, AND TOWNSHIP OF NORTH BERGEN PLANNING BOARD, ASSET MANAGEMENT CORP., AND HUDSON PLAZA, INC., DEFENDANTS.

Argued October 9, 1990—Decided February 4, 1991.

*Alfred A. Porro, Jr.,* argued the cause for appellant (*Porro and Porro,* attorneys).

*Bruce D. Greenberg* argued the cause for respondents North Bergen Action Group, Howard Barmad, and David Kronick (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys; *Douglas K. Wolfson,* of counsel; *Bruce D. Greenberg* and *Drew M. Hurley,* on the brief).

*Steven Muhlstock* submitted a letter in lieu of brief on behalf of respondent Joseph Parisi (*Gittleman, Muhlstock, Meyer and Chewcaskie,* attorneys).

*David J. Frizell* submitted a brief on behalf of *amici curiae,* David J. Frizell and Harry S. Pozycki, Jr. (*Frizell, Pozycki & Meiser,* attorneys).

The opinion of the court was delivered by

STEIN, J.

As in *Commercial Realty and Resources Corp. v. First Atlantic Properties Co.,* 122 *N.J.* 546, 585 *A.*2d 928 (1991) (Commercial Realty), also decided today, the issue in these consolidated cases is whether a variance from height restrictions in a municipal zoning ordinance is cognizable under sub-

section c of *N.J.S.A.* 40:55D-70, empowering the municipal Planning Board to grant the variance in the course of site-plan review. See *N.J.S.A.* 40:55D-60. The Law Division set aside the variance, observing that the magnitude of the height variance sought constituted "a fundamental qualitative change in the use permitted," and concluding that the variance was cognizable only under subsection d of *N.J.S.A.* 40:55D-70 and thus beyond the ancillary jurisdiction of the Planning Board. The Appellate Division affirmed, 235 *N.J.Super.* 597, 563 *A.*2d 878 (1989), noting that the proposed height variances contemplated "departures from the zoning ordinance of a truly drastic nature," *id.* at 603, 563 A.2d 878, and concluding that the municipal zoning scheme reflected an intention that variances of such magnitude be characterized as "principal structure" variances and committed to the exclusive jurisdiction of the board of adjustment. *Id.* at 599, 604, 563 *A.*2d 878. We granted certification, 118 *N.J.* 224, 570 *A.*2d 978 (1990). Based on our holding in *Commercial Realty* that variances from height restrictions are cognizable only under subsection c of *N.J.S.A.* 40:55D-70, 122 *N.J.* at 565, 585 *A.*2d at 938, we reverse the judgment of the Appellate Division and remand the matter to that court to determine the substantive validity of the variance.

I

The procedural history is set forth in the Appellate Division's opinion, 235 *N.J.Super.* at 599-603, 563 *A.*2d 878, and in this Court's prior opinion in *Parisi v. North Bergen Mun. Port Auth.*, 105 *N.J.* 25, 28-31, 519 *A.*2d 327 (1987), involving an earlier aspect of this controversial application. We set forth only so much of that history as is necessary for an understanding of the context in which the issue before us arises.

Defendant Roc Harbor Corp. (Roc Harbor) seeks to develop a 21.5-acre parcel of waterfront property in North Bergen, approximately seven acres of which is underwater. Its most recent application to the North Bergen Planning Board for

site-plan approval proposed construction of 128 low-rise residential units in thirty-one separate buildings; three nineteen-story towers containing a total of 551 high-rise units, each tower including a three-story parking garage; and a 210–slip marina. The applicant also sought variances from the forty-foot height limitation in the zoning ordinance.[1]

The North Bergen Planning Board had previously granted height variances and site-plan approval in 1982 with respect to a similar version of the same project. The Law Division had set aside that approval, determining that the North Bergen Municipal Port Authority (Port Authority) had jurisdiction over the application. *Id.* at 29, 519 *A.*2d 327. The Port Authority then approved the site plan and height variance, and the Law Division sustained that action. *Id.* at 29–30, 519 *A.*2d 327. The Appellate Division reversed in a reported opinion, 206 *N.J.Super.* 499, 511–12, 503 *A.*2d 318 (1985), concluding that the Port Authority lacked jurisdiction over the application. We affirmed and remanded the matter to the Planning Board, *Parisi, supra,* 105 *N.J.* at 40, 519 *A.*2d 327, without addressing whether height variances were cognizable by planning boards exercising ancillary jurisdiction over variances pursuant to *N.J.S.A.* 40:55D–70c.

In its latest presentation before the Planning Board, Roc Harbor's expert witnesses advanced two grounds in support of the height variance. First, Roc Harbor's architect testified that the substandard soil conditions on the site required the installation of pilings to support the proposed structures, and that despite cost projections based on soil borings, the actual depth of the pilings and their resultant cost was substantially greater

---

[1]The Appellate Division expressed uncertainty over whether the applicable height restriction was forty feet, pursuant to a 1982 ordinance, or seventy-five feet, pursuant to a 1985 ordinance. 235 *N.J.Super.* at 599, 563 *A.*2d 878. The parties apparently informed the Law Division that the application had been presented to the Planning Board on the assumption that the height limitation was forty feet.

than had been anticipated. He testified that because of those higher costs, the project would not be economically feasible unless high-rise construction was permitted. He also testified that high-rise construction would increase the amount of open space on the site. The applicant's architect was uncertain whether developing the project with seven- or eight-story structures, rather than nineteen-story, would be economically feasible. A real-estate expert testified that the proposed development would not have "any adverse effect or impact * * * on the intent of the Zoning Ordinance," or on property values in the immediate neighborhood. Responding to an inquiry from the Board's attorney, Roc Harbor's counsel stated that it sought the height variance pursuant to subsection c(2) of *N.J. S.A.* 40:55D–70, although he indicated that the variance could also be granted on the basis of "hardship."

The Board granted site-plan approval and height variances permitting construction of the three towers at a height not to exceed 177.9 feet. The Board also granted a variance from a minor violation of the ordinance's land-coverage limitation. The Planning Board's resolution noted the substandard soil conditions on the site, observing that it would be "economically unfeasible" for the applicant to construct only townhouses. The Board's resolution recited that the site's "special conditions operate as a hardship upon the applicant," and also noted that "balancing of the utility of the two requested variances versus the intent of the zoning ordinance leads to the conclusion that the variances should be granted." The resolution also included a conclusory statement that the negative criteria were satisfied, noting that "[t]he bulk of the three highrise buildings will be below the height of the Palisades."

The Law Division did not address the substantive sufficiency of the proofs offered to support the height variance. Although observing that some height variances could be cognizable under subsection c of *N.J.S.A.* 40:55D–70, the trial court concluded that the proposed height variance contemplated so qualitative a change in the intensity of the use permitted by the ordinance as

to be "the equivalent of an actual change in use." The Law Division noted that although the applicable ordinance did not regulate density, the height limitation had "the practical effect of a density restriction." Accordingly, the trial court set aside the Planning Board's approval, concluding that only the board of adjustment could grant the required height variances.

Roc Harbor appealed the Law Division's ruling to the Appellate Division and concurrently sought approval of the height variances from the North Bergen Board of Adjustment. Although by virtue of the pending appeal the Appellate Division possessed the inherent authority to restrain the Board of Adjustment proceeding, see *Rule* 2:9–1, no such relief was sought. The Board of Adjustment granted the height variances. Respondents in this proceeding instituted new actions, consolidated in the Law Division, challenging the Board of Adjustment's approval of the variances. Instead of staying the effect of the Board of Adjustment's approval pending the Appellate Division's disposition of the pending appeal, the Law Division heard argument and reversed on substantive grounds the Board's grant of the height variances. Roc Harbor appealed that decision to the Appellate Division, but that appeal has since been administratively dismissed. Our disposition of this appeal renders moot both the variances granted by the Board of Adjustment and the Law Division's reversal of those variances.

As noted, the Appellate Division affirmed the Law Division's holding that the height variances were cognizable only by the Board of Adjustment. 235 *N.J.Super.* at 604, 563 *A.*2d 878. The Appellate Division observed that the building height of 177.9 feet authorized by the Planning Board's resolution substantially exceeded the zoning ordinance's height limitation for any district in the municipality. *Id.* at 602–03, 563 *A.*2d 878. The court concluded that in view of the "truly drastic nature" of the variances sought, *id.* at 603, 563 *A.*2d 878, the application should be viewed as one involving "a 'principal structure' in a zone where such principal structure was not permitted," *id.* at 604, 563 *A.*2d 878, and therefore within the exclusive jurisdic-

tion of the Board of Adjustment pursuant to *N.J.S.A.* 40:55D–70d(1). *Ibid.*

## II

In *Commercial Realty, supra,* 122 N.J. 546, 585 *A.*2d 928, we reviewed the legislative history of the variance power now codified in subsections c and d of *N.J.S.A.* 40:55D–70. *Id.* at 553–562, 585 *A.*2d at 932–936. We discerned from that history a legislative purpose generally to distinguish use variances from so-called "bulk" or dimensional variances, and to impose an enhanced level of supervision over use variances because of their "greater potential for disrupting a municipal zoning plan." *Id.* at 562, 585 *A.*2d at 936. We observed that in the 1984 amendments to the Municipal Land Use Law, *L.*1984, *c.* 20, § 12, the Legislature had specifically included variances from floor-area-ratio restrictions, which regulate the aggregate size of buildings in relation to the area of the site, *N.J.S.A.* 40:55D–4, and density restrictions, which regulate the permitted number of dwelling units in relation to the area of the site, *ibid.,* within the more protective ambit of subsection d variances. *Commercial Realty, supra,* 122 *N.J.* at 560–562, 585 *A.*2d at 935–936. Although earlier drafts of the 1984 amendments also included height variances within subsection d, the reference to height variances was not included in the passed bill. *Id.* at 562, 585 *A.*2d at 936. We determined in *Commercial Realty* that "the legislative judgment [was] clear and unambiguous, denominating only use variances, including expansions of non-conforming uses and deviations from standards for conditional uses, *N.J.S.A.* 40:55D–70d(2) and (3), density variances, and floor-area-ratio variances, as within subsection d." *Id.* at 563, 585 *A.*2d at 937. We also concluded that a structure containing a permitted use that deviates from a height or other dimensional restriction in a zoning ordinance "does not constitute a 'principal structure in a district restricted against such * * * principal structure' within the meaning of *N.J.S.A.* 40:55D–70d(1)." *Id.* at 564–65; 585 *A.*2d at 938. Accordingly, we held

that height variances are cognizable only under subsection c of *N.J.S.A.* 40:55D–70. *Id.* at 565, 585 *A.*2d at 938.

We note respondent's contention that because a municipal restriction on height can operate as a form of density regulation, variances from height, just as density variances, should be reviewed under subsection d of *N.J.S.A.* 40:55D–70. The short answer is that the Legislature has made a different judgment, apparently concluding that variances from density and floor-area ratio, but not from height, warrant the more protective standard of subsection d. We note also the obvious distinction: height restrictions may affect density, but they need not, because structures that exceed height limitations may comply with density regulations.[2]

We also noted in *Commercial Realty, supra,* that although the grant of a substantial height variance "has the potential to disrupt a municipal zone plan," nevertheless "the affirmative and negative criteria for bulk variances pose a formidable obstacle to such applications." 122 *N.J.* at 563, 585 *A.*2d at 937. In our view, the concerns expressed by the lower courts over the "drastic nature" of the variance relief sought by the applicant are most effectively addressed by a conscientious and meticulous application of the affirmative and negative criteria to the proofs adduced. Although the substantive validity of the height variances granted by the Planning Board is to be determined on remand by the Appellate Division, we note in advance some of the obvious issues and applicable principles.

The Planning Board resolution refers generally to the criteria for both subsection c(1) ("hardship") and c(2) variances. With respect to c(1), the resolution refers to the soil conditions

---

[2]The Appellate Division opinion notes that a 1985 zoning ordinance contained a density limitation of seventy-five units per acre, and refers to the conflicting contentions of Roc Harbor and respondents in respect of compliance with that limitation. 235 *N.J.Super.* at 602–03, 563 *A.*2d 878. We do not address the issue because the applicability of North Bergen's density limitations to Roc Harbor's development is not before us.

on the site and, indirectly, to the economic impact on the project of the cost of pilings, concluding that such circumstances constitute a "hardship" within the contemplation of subsection c(1). We acknowledge that substandard soil conditions may well be encompassed by the statutory phrase "exceptional topographic conditions or physical features uniquely affecting a specific piece of property," *N.J.S.A.* 40:55D–70c(1), and evidence of such conditions may be considered in determining whether strict enforcement of the ordinance's height limitations would result in "exceptional and undue hardship" because the property's distinctive physical characteristics inhibit its development.[3] On remand, the Appellate Division will determine whether the record establishes that strict enforcement of the ordinance's height restrictions is unwarranted because of the substandard soil conditions and demonstrates a sufficient relationship between the substandard soil conditions and the magnitude of the height variances granted by the Planning Board.

▮ The Planning Board resolution also concludes that a "balancing of the utility of the * * * variances versus the intent of the zoning ordinance" supports the grant of the variances, apparently referring to the subsection c(2) criteria requiring a comparison between the "benefits of the deviation

---

[3]We noted in *Kaufman v. Planning Board for Warren Township,* 110 *N.J.* 551, 542 *A.2d* 457 (1988), "the confusion that has crept into zoning law regarding the degree of hardship necessary to sustain a dimensional variance." *Id.* at 561, 542 *A.2d* 457. During the period in which use variances were generally cognizable under both subsections c and d, see *Commercial Realty, supra,* 122 *N.J.* at 554–557, 585 *A.2d* at 932–934, "hardship" sufficient to sustain a use variance required proof that the property is not reasonably adapted to a conforming use. See *Brandon v. Montclair,* 124 *N.J.L.* 135, 149, 11 *A.2d* 304 (Sup.Ct.), *aff'd,* 125 *N.J.L.* 367, 15 *A.2d* 598 (E. & A.1940). That standard of proof would be inapplicable in dimensional-variance applications in which the use ordinarily conforms to the ordinance. Typically, the context in which hardship is considered in such cases is whether strict enforcement of a dimensional restriction, because of the property's exceptional conditions, would result in undue hardship deriving from limitations on the development of the property attributable to such conditions. See *Davis Enters. v. Karpf,* 105 *N.J.* 476, 493, 523 *A.2d* 137 (1987) (Stein, J., concurring).

[and] * * * any detriment." *N.J.S.A.* 40:55D–70c(2). See *Kaufmann v. Planning Bd. for Warren Township*, 110 *N.J.* 551, 563–65, 542 *A.*2d 457 (1988). The resolution does not specificy the "benefit" to be derived from the height variances, and the record refers only to an anticipated increase in open space. The obvious issue is whether the record and the resolution's imprecise reference to the c(2) criteria establish that the grant of the height variances represents "a better zoning alternative for the property," *id.* at 563, 542 *A.*2d 457, outweighing any detriment, and demonstrate an adequate relationship between the purported benefits and the extent of the height variances granted by the Board.

Finally, we note the resolution's conclusory determination that the negative criteria have been satisfied. Although the grant of bulk variances does not generally require the enhanced quality of proof concerning the negative criteria that is mandated for use variances, see *Medici v. BPR Co.*, 107 *N.J.* 1, 21–22, 526 *A.*2d 109 (1987), it is self-evident that the greater the disparity between the variance granted and the ordinance's restriction, the more compelling and specific the proofs must be that the grant of the variance "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." *N.J.S.A.* 40:55D–70. Because zoning restrictions are enacted to further municipal planning and zoning objectives, it is fundamental that resolutions granting variances undertake to reconcile the deviation authorized by the Board with the municipality's objectives in establishing the restriction. Expert testimony or resolutions that merely track the statutory language are inherently suspect. *Medici, supra,* 107 *N.J.* at 22–23, 526 *A.*2d 109. Accordingly, there must be a careful review of the record before the Board to determine whether the proofs, in conjunction with the Board's resolution, adequately address the negative criteria.

The judgment of the Appellate Division is reversed and the matter remanded to that court for further proceedings consistent with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.