235 N.J. Super. 577 (1989)
563 A.2d 866
COMMERCIAL REALTY AND RESOURCES CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FIRST ATLANTIC PROPERTIES CO., DEFENDANT-APPELLANT, AND THE PLANNING BOARD OF THE TOWNSHIP OF NEPTUNE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 14, 1989.
Decided August 31, 1989.
*580 Before Judges KING, BRODY and ASHBEY.
Peter J. Carton argued the cause for appellant First Atlantic Properties Company (Crummy, Del Deo, Dolan, Griffinger and Vecchione, attorneys, Peter J. Carton and Paul F. Campano, on the brief).
Lynne Andreades argued the cause for respondent Neptune Township Planning Board (Fredrick P. Niemann, attorney, Lynne Andreades, on the brief).
James D. Carton, III argued the cause for respondent Commercial Realty & Resources Corporation (Carton, Nary, Witt and Arvanitis attorneys, James D. Carton, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
In this land use case the primary question is planning board jurisdiction over height variances. We hold that, where the municipality does not provide in its municipal zoning ordinance for a "floor area ratio" regulation as defined in the statute, but does provide a height limitation, variances from the height limitation (not involving residential density) may be considered N.J.S.A. 40:55D-70c variances (c variances) and within the jurisdiction of the planning board as incidental to its site plan review authority unless the municipal legislative scheme unequivocally provides otherwise. Where the use in question is permitted at the height requested in other districts, and the municipality has provided that other structures in the district are permitted at the height requested, it cannot be said that the municipality intended that the variance sought represented an application to be brought exclusively before the zoning board of *581 adjustment (zoning board) under N.J.S.A. 40:55D-70d(1) (d variances) as a variance from a permitted "principal structure."[1]
These are the facts in this case. Defendant First Atlantic Properties (Atlantic), was the contract purchaser of a 2.8 acre tract in Neptune Township. It sought to build a five-story 44 feet high "motor inn" with 133 rooms and no ancillary services in a light industrial (LI) zone where the use was permitted. The Township of Neptune Planning Board (Board) granted site plan approval and two variances, one for height and one for parking.[2] Following Board approval plaintiff objector filed a complaint in lieu of prerogative writs in which it did not claim that the Board exceeded its statutory authority in considering the variances, but challenged the approvals on the merits. The Law Division judge sua sponte concluded that the Board lacked jurisdiction to grant the height variance which he held was the exclusive province of the Neptune Zoning Board under the Municipal Land Use Law (MLUL) and vacated the Board's action. The court did not rule on plaintiff's other arguments.
Neptune's zoning ordinance was less than clear. Originally permitted LI uses were manufacturing, storage, animal hospitals, printing, laboratories, building supplies, public utilities and computer centers. A 1984 amendment added office buildings up to six stories and motels as permitted uses in the district, as well as all of the uses permitted in the commercial highway service (CHS) district. The general LI height limitation of two stories and 30 feet was not amended. Where motels were permitted, in the commercial service (CS) zone and the executive service (ES) zone, the height limitation was up to six stories *582 or 90 feet. The LI parking regulation, "one parking space for each 2 employees," appeared to apply only to office space.

I
The Law Division judge found inapplicable the planning board power under N.J.S.A. 40:55D-60 and N.J.S.A. 40:55D-70c whereby, incidental to its site plan approval, the Board was empowered to grant either a "hardship" (N.J.S.A. 40:55D-70c(1)) variance or a N.J.S.A. 40:55D-70c(2)[3] variance if the Board "was satisfied that the purposes of the [Municipal Land Use Law] would be advanced" and the "benefits of the deviation would substantially outweigh any detriment" created. He concluded that the variance could be granted only under N.J.S.A. 40:55D-70d, which specifically reserves to the zoning board exclusive jurisdiction over any variance:
(1) [permitting] a use or principal structure, in a district restricted against such use or principal structure;[4]
The judge concluded that, although Atlantic's proposed use was permitted, the structure was not because of its height. On appeal Atlantic urges that N.J.S.A. 40:55D-70d must be interpreted to require exclusive zoning board jurisdiction over "use" variances only and that height restrictions concern "bulk," not being functionally different from area, frontage and side-yard deviations. The Board agrees, urging that the intent of the MLUL was to limit zoning board exclusive jurisdiction respecting structure size in non-residential development to those buildings *583 the construction of which would violate specific floor area ratio standards.[5]N.J.S.A. 40:55D-70d(4). The Board would have us rule that where the zoning ordinance fails to specify a maximum floor area ratio, there is no limit to planning board height variance jurisdiction incidental to site plan review unless the variance would be so extreme that an amendment to the ordinance is required. Since plaintiff agrees with the Law Division judge's ruling that all height variances belong before the zoning board rather than before the planning board, the parties argue diametrically opposed "bright lines" establishing planning board jurisdiction over height variances.
At issue is the intent of the Legislature in its delineation of permissible municipal action and the intent of the municipality in following that mandate. We first review legislative intent. "Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness and legislative history." Coletti v. Un. Co. C. Freeholders, 217 N.J. Super. 31, 35 (App.Div. 1987). See also Levin v. Township of Parsippany Troy Hills, 82 N.J. 174, 182 (1980). There is, of course, extensive prior history of the MLUL. That history was before the Legislature and must be considered in interpreting the applicable MLUL. Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 174 (App.Div. 1986); Yacenda Food v. N.J. Authority, 203 N.J. Super. 264, 273 (App.Div. 1985).
Implicit in the argument of the parties and the reasoning of the trial judge is the traditional difference between a "bulk" (c) variance and a "use" (d) variance. In 1976, the legislature *584 aligned height and bulk in the same section of the statute, differentiating between regulating the intensity of land use and regulating the nature of the use itself. See N.J.S.A. 40:55D-65a and b which provide that a zoning ordinance may:
a. Limit and restrict buildings and structures to specified districts and regulate buildings and structures according to their type and nature and extent of their use, and regulate the nature and extent of the use of land for trade, industry, residence, open space or other purposes.
b. Regulate the bulk, height, number of stories, orientation, [added by L. 1980, c. 146] and size of buildings and the other structures, the percentage of lot or development area that may be occupied by structures, lot sizes and dimensions, and for these purposes may specify floor area ratios and other ratios and regulatory techniques governing the intensity of land use and the provision of adequate light and air.... [emphasis added].
Prior to 1976 only the zoning board had power over either use or bulk variances. Under N.J.S.A. 40:55D-39c the zoning board could grant bulk variances upon a showing that some physical condition of the property created a hardship to the property owner. A use variance could only be granted under N.J.S.A. 40:55-39d where the applicant had to prove "special reasons" and approval had to come from the governing body.
This was the law in effect at the time our Supreme Court decided Irving Isko et als. v. Planning Bd. of Tp. of Livingston et als., 51 N.J. 162 (1968), where the Court ruled that a height variance was unnecessary respecting a pre-existing nonconforming structure. In Cranmer v. Township of Evesham, 162 N.J. Super. 204, 212 (Ch.Div. 1978), the court construed Isko, saying:
In Isko v. Livingston Tp. Planning Bd., 51 N.J. 162 (1968), the Supreme Court held that questions of height should be considered under the use variance portion of the statute (an earlier, but in this connection, identical statute to the one before me), because it found no "exceptional narrowness, shallowness or shape * * * or exceptional topographic condition" of the specific piece of property which would cause the height restriction to result in undue hardship. "Hardship personal to the owner which is unrelated to the physical characteristics of the land is not contemplated by subsection (c) and does not constitute sufficient grounds for the granting of a variance under that subsection." Id. at 174. From this it may be inferred that proof of a relationship between land and height (here, between land and floor space), causing undue hardship, could support a bulk variance. However, the court did not discuss the prohibitory *585 language of the statute, which I find to be a conclusive denial of that suggested power. [162 N.J. Super. at 212]
Cranmer has been cited (and was cited here by the Law Division judge) for the proposition that all height variances belong before the zoning board. Cranmer, however, concerned planning board jurisdiction over a planned unit development variance for a lower than required minimum internal residential space under the law which limited planning board jurisdiction to external structural dimension variances.[6] The court held that the planning board did not have jurisdiction over variances respecting internal building spaces, therefore the zoning board retained jurisdiction.
In 1979 the Legislature amended the MLUL. In so doing it broadened the power of planning boards respecting N.J.S.A. 40:55D-70c variances by eliminating the restriction to lot area, lot dimensional, setback and yard requirements. L. 1979, c. 216, § 19. It also amended N.J.S.A. 40:55D-70d to broaden the power of the zoning board to "clarify that `d' variances can be granted [by the zoning board] for bulk restrictions for the special reasons defined in case law even if the structure or use is permitted in the zoning district...." Assembly Municipal Government Committee, Statement to Senate Bill 1125 (January 25, 1979).
Further difficulties with these 1979 amendments prompted passage of the 1984 amendments. The relevant events are described in Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551 (1988):
In 1979, however, the Legislature broadened subsection d to authorize variances for "special reasons * * * from regulations pursuant to [the zoning article of the MLUL], including, but not limited to, allowing a structure or use in a district restricted against such structure or use." L. 1979, c. 216 (emphasis added). In other words, dimensional variances were swept into the d variance *586 rubric. Michelotti Realty Co. v. Saddle Brook Township Zoning Bd., 191 N.J. Super. 568, 571 (App. Div. 1983); Hudanich v. Avalon, 183 N.J. Super. 244, 263 (Law Div. 1981). But the combination of (1) the 1979 amendment to the MLUL, which clarified that "special reasons" variances under subsection d included more than use variances, and (2) the "very restrictive interpretation by the courts of the `hardship' variance power in subsection c." cases was seen as producing an unanticipated shift of applications from planning boards to zoning boards. Sponsor's Statement to Assembly Bill No. 1169, L. 1984, c. 20.
The Legislature expressed the concern that although subdivision, site plan, and planning aspects were dominant in many of these applications, because of the interplay between the subsection c and d provisions, the "boards of adjustment [were] being overburdened with applications for which the planning boards [were] more suitable." Id. at 20. Zoning boards were using their subsection d power to grant dimensional variances without a showing of hardship. In addition, since the various claims for relief from dimensional requirements were swept into the (d) variance format, many more applications were subject to the requirement that five out of the full seven board of adjustment members had to vote in favor of proposed variances.... [Id. at 559-560, emphasis in original]
The 1984 amendments made significant changes. First, they created the c(2) variance. Secondly, they described with particularity the types of d variances which could be granted only by the zoning board (the list of five cited above). Thirdly, the Legislature provided that the zoning board had exclusive jurisdiction to grant a variance to permit "a use or principal structure in a district restricted against such use or principal structure...." N.J.S.A. 40:55D-70d(1), as amended by L. 1984, c. 20, § 12 (emphasis placed on amendment).
There is some disagreement among commentators as to how to treat height variances in this framework. In Cox, New Jersey Zoning and Land Use Administration (1988), the author notes that "[t]he question of whether regulations dealing with the height of buildings and structures is relaxable under subsection c or subsection d has always been difficult." Cox, supra, § 6-3.4(f) at 73. Cox's opinion was that, while some "slight" height variances are cognizable as c variances, others ("substantial deviations") are not. Cox, supra, § 6-3.4(f) at 73-74, § 7-4.3 at 89-90.
In Pozycki, "Defining The `d' Variance," 114 N.J.L.J. 665, 672 (December 27, 1984), the author said:

*587 In situations involving requests to increase the height of a proposed structure, it was thought, and correctly so, that an increase in height constituted an intensification in use and, therefore, a d variance was appropriate. Floor area ratio, defined in N.J.S.A. 40:55D-4 as "the sum of the area of all floors of buildings or structures compared to the total area of the site," addresses the problems of intensification by mandating a FAR variance when an applicant for non-residential development wishes to exceed the degree of development permitted under the ordinance. The height of a structure thereby becomes more of a design or site consideration. Therefore, if an applicant wished to develop the property more intensely than that permitted by the ordinance, the FAR variance would be sought; if, however, he desired to increase the height of a proposed structure without a concomitant intensification in use, as measured by the floor area ratio, the FAR variance would not be required. Municipal attorneys should advise their clients to provide for FAR regulations where none exist.
Pozycki did not give an opinion concerning the effect of a height limitation where the municipality failed to provide a FAR ratio.[7]
Our Supreme Court has interpreted much of the legislative history. In Medici v. BPR Co., 107 N.J. 1, 22-23 (1987), the Court interpreted the d variance requirements under the 1984 law. In Davis Enterprises v. Karpf, 105 N.J. 476 (1987), the Court addressed the issue of whether a hardship variance to build a structure on an undersized lot must be denied because an adjoining property owner offered to purchase the property at fair market value. In a concurring opinion, Justice Stein, joined by Chief Justice Wilentz, said that a c variance "is available from any regulation, other than restrictions on use, enacted pursuant to the zoning power, including, for example, requirements as to lot size, setbacks, land coverage, height, and parking." Id. at 492-493 (emphasis added). He added: "Thus, a lot with unusual topography may provide a basis for a variance from restrictions as to maximum height." Id. at 493.
*588 More recently the Court discussed the c(2) variance. In Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. at 554, the applicant sought a subdivision, and incidentally, a variance from requirements for road frontage (83.74 feet where 100 was required) and side-yard setback (15 feet where 20 feet were required). The proposed design resembled a "flag lot," with front and back owners sharing an easement to use a garage (which was 15 feet from subdivision boundary). The Court ruled that a c(2) variance was properly granted. In its opinion, the Court recited the history of the "shift of authority" in land-use decision making. Paraphrasing the 1984 statutory amendments, particularly the delineation of zoning board exclusive jurisdiction, the court characterized d variances as:
(1) use variances; (2) expansion of nonconforming uses; (3) deviation from conditional use requirements; (4) increase in permitted floor area ratios; and (5) increase in permitted density.... [Id. at 560]
The Court further described the c(2) variance as being one of "lesser moment" than the "special reasons" d variance so that it "need not be so closely confined to the general welfare," saying, "[i]n some cases a height variance might better serve to conserve `open space....'" Id. at 563. The Supreme Court cited Justice Stein's dicta in Davis Enterprises v. Karpf, 105 N.J. at 493, with approval. 110 N.J. at 562.
In Wash. Tp. Zon. Bd. v. Planning Bd., 217 N.J. Super. 215, 217 (App.Div. 1987), certif. den. 108 N.J. 218 (1987), an applicant applied to the planning board for site plan approval and a variance from a floor area limitation of 10,000 square feet. He simultaneously sought a use variance from the zoning board. Id. at 217-218. The zoning board concluded that it had jurisdiction and denied the variance. Id. at 218. The planning board granted site plan approval and the variance. The zoning board brought an action in lieu of prerogative writs against the planning board contesting planning board jurisdiction. Id. at 219. We affirmed a dismissal of that suit on the ground that a zoning board lacked standing to challenge a decision of a planning board. Id. at 223. We said, however,

*589 ... it is at least arguable that the application sought relief from the use requirements of the ordinance, rather than the bulk requirements as the latter relate to the physical characteristics of the land. See Irving Isko et als. v. Planning Bd. of Tp. of Livingston, et als, 51 N.J. 162, 173-174 (1968) [Id. at 220; emphasis in original]
We regard it as important that the ordinance there being construed explicitly prohibited any deviation from the designated floor area limits for the particular use and structure which the applicant sought to build.
In Wawa Food Market v. Planning Bd., 227 N.J. Super. 29, 32 (App.Div. 1988), certif. den. 114 N.J. 299 (1988), an applicant for site plan approval sought planning board waiver from the municipality's parking and driveway requirements under N.J.S.A. 40:55D-51b, which specifically permits such waivers of site-plan requirements if enforcement of the ordinance would be impractical or cause undue hardship. Id. at 33. We held that the action of the municipality in placing the regulations in the zoning and not in the site plan sections of the land-use ordinance meant that the regulation could not be waived. The applicant was required to obtain a variance under N.J.S.A. 40:55D-70c. Id. at 34-36.[8] In Terner v. Spyco, Inc., 226 N.J. Super. 532, 544 (App.Div. 1988), we said of waivers from flood plan restrictions, that, although the ordinance prohibited all buildings and structures in the zone, the planning board had jurisdiction to grant the waivers because the ordinance implemented environmental legislation which specified the criteria for granting waivers which was similar to that of N.J.S.A. 40:55D-70c(1). We there specifically noted that the ordinance might have required zoning board consideration if ordinance grounds to waive the restrictions had been reflective of uniquely zoning board jurisdiction. 226 N.J. Super. at 546.
In summary, our review persuades us that Atlantic and the Board's theory of expanded planning board jurisdiction over height variances is supported by the following:

*590 (1) The Legislature has continually increased planning board power to grant variances in connection with site plan review and narrowed exclusive zoning board power. See L. 1975, c. 291, § 47a; L. 1979, c. 216, § 19 & § 23; L. 1984, c. 20, § 12;
(2) The Supreme Court has recently given this legislative trend a broad interpretation. Kaufmann, 110 N.J. at 562-563;[9]
(3) While height regulations find their justification in the legitimate desire of municipalities to prevent congestion and an overly intensive use of the premises, as well as to preserve adequate light and air, 3 Williams, American Land Planning Law (1985 rev.), §§ 67.01, 67.13 at 387-388, 427, frontage, area and side-yard restrictions (ordinarily planning board concerns) serve the same goals. All are concerned with regulating intensity of land use. Id. at § 68.01-68.06 at 434-437;
(4) Forum shopping should be discouraged and applicants reasonably certain of which board to choose. See Kaufmann, 110 N.J. at 558 (MLUL designed to promote one-stop shopping by giving each board ancillary jurisdiction); Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 447 (App.Div. 1982) (MLUL designed to eliminate delays and inconsistencies resulting from multiple board review); Pozycki, supra, 114 N.J.L.J. at 672.
The contrary arguments are these:
(1) The zoning board continues to retain exclusive jurisdiction over a variance from a permitted "principal structure" as well as from a permitted "use" in the district;
(2) The legislature not only specified that floor area ratio, a criterion otherwise associated with bulk, should remain the province of the zoning board, it specified instances when a municipal ordinance "may" authorize the planning board to allow greater intensity of land use than permitted by ordinance. N.J.S.A. 40:55D-39c(4);
(3) Although the planning board explicitly has no power to grant a d variance (N.J.S.A. 40:55D-60), regardless of its other jurisdiction, the zoning board exercising its d variance jurisdiction may grant site plan approval (N.J.S.A. 40:55D-76);
(4) While there is a surface similarity between lot coverage limitations and height restrictions, a height variance has no boundaries. There must be an inference that the Legislature did not intend to have all such variances characterized as a matter of "lesser moment," Kaufmann, 110 N.J. at 563, and none a "drastic departure."[10]
*591 We are first satisfied that the legislature intended that some height variances fall within planning board jurisdiction. On the other hand, we cannot agree with Atlantic and the Board that all site-plan-related height variances belong before the planning board, subject only to a variance so deviant as to require rezoning. Such a construction would require us to give no meaning to N.J.S.A. 40:55D-70d(1) which continues to provide that the planning board may not grant a variance to allow a "principal structure" unpermitted in the zone.[11] For the same reason we also cannot agree with the Board that the municipality's failure to regulate density and floor area ratio standards means that it intended to leave all height variances to the planning board. On the contrary we consider it logical that municipal silence respecting density and floor area ratio standards, combined with setting a height limitation, reasonably leads one to believe the municipal legislators thought that a height restriction in the zoning ordinance would control intensity of use.
From the history we have outlined, we conclude that for nonresidential developments: (1) Where the municipality has designated floor area ratios for the district, they control in determining which board has jurisdiction even if the applicable height limitations appear to conflict. If the project complies with the applicable floor area ratio regulation, then the planning board has jurisdiction over a height variance which becomes a matter of design, rather than intensity of use. If there is any question about compliance with floor area ratio regulations, however, the variance is a matter for zoning board review; (2) Where the municipality has failed under N.J.S.A. 40:55D-70d(4) to designate a relevant floor area ratio standard, *592 only if there is clear evidence that the municipality so intended should zoning board jurisdiction be construed to be exclusive. In the absence of such evidence, the planning board has jurisdiction over height variances in connection with its site plan review powers; (3) If the ordinance does not specifically forbid the structure's height for the permitted use in question and does not forbid all structures at the height requested in the district, there is an absence of compelling evidence that the variance falls within N.J.S.A. 40:55D-70d(1) or that the structure sought is a "principal structure" which is forbidden in that district.[12] While this analysis provides less than a "bright line", "[t]he primary responsibility for line-drawing ... is vested in the legislature." Brendale v. Confederated Tribes and Bands of the Yakima Indian Nation, ___ U.S. ___, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989).
Applying these principles to this appeal leads us to a different conclusion from that reached by the Law Division judge.[13] The height limitation in the Neptune ordinance was not specific as to this use or structure. Unlike the ordinance in Wash. Tp. Zon. Bd. v. Planning Bd., 217 N.J. Super. at 217, the proscription here resulted only from the application of a district's general height limitation under an ordinance which also permitted some structures at the height requested and permitted in other districts both the use and the height requested. We derive from this municipal legislative pattern no evidence that the municipality regarded the structure at the height applied for as a principal structure for which a variance could only be granted after the zoning board's application of d variance standards and procedure. In so viewing the variance *593 in the light of the ordinance, we are satisfied that, there being no contrary municipal mandate, planning board jurisdiction was intended by the MLUL. We accordingly reverse the contrary Law Division order.

II
Although the Law Division judge did not consider the merits of the c(2) variance, we have the benefit of the opinion in Kaufmann, which he did not. In the interest of expediting the matter, we exercise original jurisdiction. R. 2:10-5. On appeal we apply the same standard of review as applied in the Law Division. Charlie Brown of Chatham v. Board of Adjustment, 202 N.J. Super. 312, 321 (App.Div. 1985).
It is of course axiomatic that the decision of a local board on a variance application is presumptively valid, to be overturned only upon a showing that it was arbitrary, unreasonable or capricious. Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 296 (1965). Ward v. Scott, 16 N.J. 16, 23 (1954); Charlie Brown of Chatham v. Board of Adjustment, 202 N.J. Super. at 321.
On the merits, plaintiff contends that the applicant failed to prove the negative criteria as required for both a c and a d variance by N.J.S.A. 40:55D-70d (as interpreted by Medici v. BPR Co., 107 N.J. at 22, i.e. that the height and parking variances would not be of substantial detriment to the zone plan and zoning ordinance. We reject this position. In Kaufmann the Court reiterated that a "special reasons" variance required an enhanced quality of proof that the variance was not inconsistent with the master plan and zoning ordinance, citing Medici. 110 N.J. at 557. No such "enhanced" quality of proof was referred to for the c(2) variance. The Court also distinguished the c(1) "hardship" standard from the c(2) "flexible" standard by saying,

*594 The c(2) variance is entirely different, and the Legislature has made one thing clear about it: the grant must be rooted in the purposes of zoning and planning itself and must advance the purposes of the MLUL.
* * * * * * * *
By definition, then, no c(2) variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a c(2) case, then, will be not on the characteristics of the land that, in light of current zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community. [110 N.J. at 563; emphasis in original]
The phrasing of the municipal board resolution in this case may be reasonably construed to mean that the Board found that the variance would benefit the zoning plan. N.J.S.A. 40:55D-70c(2); N.J.S.A. 40:55D-70d. If the Board's action in passing upon the c(2) variance can fairly be characterized as designed "to effectuate the goals of the community as expressed through its zoning and planning ordinances" (Kaufmann, 110 N.J. at 564, the relevant "negative criteria" of Medici have been met.
Our review of the record first persuades us that the parking variance was a proper exercise of the Board's discretion. The applicant provided evidence that meeting the parking requirements of 166 spaces would be at the expense of landscaping and that 133 spaces were adequate. The Board's approval of placing trees and shrubs was supported by a record that it promoted a desirable visual environment and prevented urban sprawl. N.J.S.A. 40:55D-2(i), (j). Cf. Kaufmann, 110 N.J. at 563.
Respecting height, the Board relied on the applicant's planner's opinion that:
... the benefits do outweigh any detriment ... [A]n attractive building ... will provide service to the surrounding area and support for the significant and substantial development that is now ongoing or in the planning stage for this immediate area.
While this wording lacks specificity respecting the zoning benefits to be gained by the height variance, the record in this *595 respect does not differ materially from that in Kaufmann, 110 N.J. at 554-555. Nonetheless, the Supreme Court there found sufficient evidence in the record to sustain the planning board's action as consistent with township policy. Id. at 564-565. The Court said:
We believe that on this record the benefits of zoning (more harmonious lot sizes) could be seen as substantially outweighing any detriment. Given that the establishment of appropriate population densities is a recognized purpose of zoning, the grant of this variance to permit this property to be divided into two lots conforming in respect of area, but marginally insufficient in respect of the frontage and side-yard requirements, is also consistent with that statutory objective. [Id. at 565]
A similar analysis applies here. The lot to be developed by a "motor inn" was part of a major subdivision of 54 acres located on the highway and near the Garden State Parkway. The entire development was part of a plan referred to at the planning board hearing as a "Corporate Center." It is a fair reading of the 1984 zoning amendments which expanded the permitted LI uses that such a center, or similar development, was then within the contemplation of the municipality. While not a "planned unit development", the plan appeared to "relate the ... design and layout of ... commercial ... development to the particular site." N.J.S.A. 40:55D-2k. This was the background for testimony (and the resolution) that the proposed building fit the intended character in the zoning district. There was no testimony to the contrary. In fact the positions taken by the objectors at the Board made it abundantly clear that the application was not an isolated matter, but part of a large project which had already received municipal blessing.[14]
*596 Respecting the height variance and its relationship to the development, the corporate center was designed to attract business from outside the community. The "motor inn" was targeted to such a commercial traveler, a budget facility, with no frills. There was testimony that the motor inn as designed promoted internal security (as opposed to a two-story motel, with outside access stairways) in order to meet the demonstrated security needs of such travelers, often women. Thus, the record supported a conclusion that varying from the original general height limitation for the district had positive relevance to the town's planned economic development.
The same record justified the Board's conclusion that the variance "[could] be granted without substantial detriment to the public good and [would] not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70; Medici, 107 N.J. at 21. In Kaufmann, the Court said with respect to these negative criteria, a variance will be upheld if the "board without arbitrariness concludes that the harms, if any, are substantially outweighed by the benefits." 110 N.J. at 565.[15] We conclude that the Board did so find and that its finding was supported in the record.

III
Plaintiff also attacks the manner in which the planning board drafted and adopted the resolution of approval. The applicant's attorney submitted a draft resolution to the Planning Board's attorney. Board members had an opportunity to review the draft resolution. The Board's attorney told Board members that the resolution was submitted by the applicant. He cautioned the Board concerning its independent responsibilities. When one Board member asked to recess, the attorney *597 responded that it was improper to discuss the matter privately. Following a brief public discussion on the merits, the Board voted 3-1 in favor of approving the application.
Plaintiff's reliance on the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq., Caldwell v. Lambrou, 161 N.J. Super. 284 (Law. Div. 1978); Accardi v. Mayor & Coun. of No. Wildwood, 145 N.J. Super. 532 (Law Div. 1976), is misplaced. While undoubtedly the procedure could inspire a claim that the Board did not act independently, there is no evidence that claim was well-founded. Plaintiff fails to refer to any section of the Open Public Meetings Act or of the Municipal Land Use Law which specifically prohibits any of the procedures followed and we can find none. We thus find no procedural error warranting overturning the Board's resolution.
The Law Division order is reversed and the action of the Neptune Planning Board reinstated.
NOTES
[1] We cannot overemphasize that this issue concerns the jurisdiction of the planning board, not the standards by which its judgment should be guided in ruling on a c variance.
[2] The Board, applying the commercial service zone's parking requirements, determined that the ordinance required 166 parking spaces (1.25 per "motel" unit). Atlantic proposed 144.
[3] Only a c(2) variance is at issue.
[4] The other N.J.S.A. 40:55-70d variances reserved to the zoning board are those seeking:

(2) an expansion of a nonconforming use,
(3) deviation from a ... standard pertaining to a conditional use,
(4) an increase in the permitted floor area ratio as defined in ... [N.J.S.A. 40:55D-4],
(5) an increase in the permitted density as defined in ... [N.J.S.A. 40:55D-4] except [for buildings involving one or two dwelling units on an isolated undersized lot or in a minor subdivision].
[5] "Floor area ratio" is defined as "the sum of the area of all floors of buildings or structures compared to the total area of the site." N.J.S.A. 40:55D-4. The term "structures" includes not only "floors," but garage and parking lots. See N.J.S.A. 40:55D-3; N.J.S.A. 40:55D-7. "Floor area ratio" is usually made applicable to non-residential structures, although not specifically limited to them in the statute. Legislative use is consistent with this interpretation. See N.J.S.A. 40:55D-45.1. Neptune's ordinance apparently had no floor area ratio standards for its LI district.
[6] The applicable law then empowered planning boards to grant variances in connection with subdivision or site plan review, but only "pursuant to [N.J.S.A. 40:55D-70c] from lot area, lot dimensional, setback and yard requirements...." L. 1975, c. 291.
[7] Since 1976, the municipality has been able to give the planning board authority respecting deviations from intensity of use regulations in connection with planned unit developments. See N.J.S.A. 40:55D-39 et seq., recently amended and expanded by L. 1987, c. 129.
[8] See also Sheston Oil v. Bor. of Avalon Planning Bd., 214 N.J. Super. 593, 598 (App.Div. 1987), certif. den. 107 N.J. 134 (1987).
[9] Dicta by our Supreme Court is entitled to weight. Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 187 (1961), cert. den. 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961); English v. Stokes Molded Products, Inc., 43 N.J. Super. 68, 78 (App.Div. 1956).
[10] The statement annexed to the Assembly bill (A 1169), which became the 1984 law, said the legislature intended to preserve appeal to the governing body only zoning board approvals of "the most drastic departure" from municipal development regulations.
[11] Construing the word "principal" as the opposite of "accessory" as the Board urges does not dictate a contrary result.
[12] Terner v. Spyco Inc., 226 N.J. Super. at 536, is not to the contrary. The ordinance there, prohibiting the building of any structure regardless of dimension, was reflective of plan, design and environmental, (planning board) considerations. See N.J.S.A. 40:55D-34.
[13] Atlantic's first point that no variance was required is clearly meritless.
[14] Two municipalities were involved in the total development which required a major intersection. Its location depended upon Department of Transportation approval which depended upon the agreement of all benefitted developers, including the applicant. The objectors were other developers who sought the applicant's consent to their plan for the location of the intersection. None of this controversy was in any way related to the variances in question, but it demonstrated the integrated nature of this application for site plan approval with the overall project.
[15] Whatever the objectors' concern over the intersection, there was no evidence that the variances adversely affected adjoining properties, the other "negative" criteria. N.J.S.A. 40:55D-70; Medici, 107 N.J. at 22 n. 12.